UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

NASEER A. SHEIKH, SAEEDA N. SHEIKH, AFZAL SHEIKH, *and* RASHIDA SHEIKH,

*Plaintiffs*,

v.

REGIONS BANK,

*Defendant*.

Case No. 1:11-cv-198

Judge Mattice

**MEMORANDUM AND ORDER**

Before the Court is the Motion to Dismiss (Doc. 6) ("Motion" or "MTD"), filed by Defendant Regions Bank ("Regions") on August 18, 2011, together with a Memorandum in Support (Doc. 8) ("MTD Mem."). Plaintiffs filed their "Memorandum in Opposition to Defendant's Motion to Dismiss" (Doc. 8) ("Response") on September 8, 2011, and Defendant filed its Reply (Doc. 9), on September 16, 2011. For the reasons explained below, Defendant's Motion to Dismiss (Doc. 6) will be **DENIED**.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides an affirmative defense for a party's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This defense is typically asserted as a motion to dismiss, where the movant challenges the sufficiency of claims set forth in a complaint. In *Ashcroft v. Iqbal*, the Supreme Court of the United States expanded on its holding in *Bell Atl. Corp. v. Twombly* by stating that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court explained this restatement by outlining the

two "working principles" that underlay *Twombly* and govern a motion to dismiss. *Id*. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and thus "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* Instead, a court considering a motion to dismiss should accept as true only well-pleaded factual allegations. *Id.* at 1950. Accordingly, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

The second principle outlined in *Iqbal* is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). The reviewing court must determine, not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct," which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. Therefore, to survive a motion to dismiss under 12(b)(6), plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

## II. BACKGROUND

### A. Factual History

The facts, viewed in the light most favorable to Plaintiff, are as follows. In 1999, the

Plaintiffs "determined that they needed a safe place to keep several items of very valuable jewelry" – all of which were made of 22-karat gold and most of which were hand-made family heirlooms – and some important documents. (Compl. ¶¶ 4, 6.) Because they had several accounts with Defendant Regions Bank, they decided to lease a safe deposit from that institution, specifically at the North River branch; all Plaintiffs were listed as lessees on the safe deposit box. (*Id.* ¶¶ 5-6.)

In late 2000, Regions sent a letter to Plaintiff Naseer Sheikh – at his address at that time 311 California Avenue, Chattanooga, Tennessee – that rent on the safe deposit box was overdue. (*Id.* ¶ 8.) Naseer Sheikh took the letter to the North River branch and "was assured that the Bank had set up his safety-deposit box account so that the annual rental fees would be deducted from his checking account." (*Id.*)

According to what Regions officials allegedly told Plaintiffs and not disputed, as yet, by Defendants, in October 2002, Regions allegedly drilled into the safe deposit box, seized the non-document contents – including at least 25 pieces of jewelry hand-made from 22-karat gold, weighing an aggregate 1571 grams, with an approximate market value in excess of $73,000.00 – and sold them at auction to pay the past due rent. (MTD Mem. at 2-3; Compl. ¶ 19.) It is not clear what happened to the document contents of the box.

Plaintiffs heard nothing more until November 2005, when Naseer Sheikh – still residing at 311 California Avenue, Chattanooga, Tennessee – visited the North River branch to check on the contents of the box and was informed that Regions had been drilled out by officials of the bank in October 2002 and that the non-document contents of the box had been seized and auctioned off to pay the overdue rent on the box. (Compl. ¶¶ 11-12.) When a Naseer Sheikh asked how there could be overdue rent, given the automatic

withdrawal authorization and that he had had accounts at the bank the entire intervening time, Defendant's officials offered no explanation. (*Id.* ¶ 13.) And when Naseer Sheikh asked why neither he nor any of the other lessees had ever received any notice – of the overdue rent, of the intent to drill out the box, of the sale of their items – he was told that he had been notified by certified letter addressed to him at 1631 Eagle Drive, Hixson, Tennessee, 37343; they gave him a photocopy of a green return-receipt card evidencing delivery of some item to some person at the stated address. (*Id.* ¶ 14.) Plaintiffs allege that none of them have ever lived there nor ever gave that address to Regions; at all times relevant to the action, Plaintiffs Naseer and Saeeda Sheikh lived at the 311 California Avenue address and Plaintiffs Afzal and Rashida Sheikh lived at 1431 Coffelt Road, Hixson, Tennessee, 37343, and these were the addresses they each gave to Regions in connection with the safe deposit box. (*Id.* ¶¶ 15-16.)

Plaintiffs allege that "[t]he rental of the safe-deposit box to the Plaintiffs in return for compensation created a common-law bailment-for-hire contract between the Plaintiffs and the Defendant Bank," and that Regions "had a contractual obligation to exercise ordinary care with respect to the valuable property owned by the Plaintiffs and entrusted to [its] care and protection." (*Id.* ¶¶ 20-21.) They further allege that Regions, "by wrongfully disposing of the Plaintiffs' property without notice to any of the Plaintiffs, breached its contract with the Plaintiffs, and is liable to the Plaintiffs for the value of the property wrongfully disposed of . . . in an amount not less than $73,000.00 together with pre-judgment interest at the maximum rate permitted by law" and for punitive damages – in an amount not less than $100,000 – "due to the grossly negligent manner in which it breached its contract with the Sheikh family [and] . . . disposed of the Plaintiffs' family heirloom jewelry." (*Id.* ¶¶ 22-23.)

### B. Procedural History

Plaintiffs filed the instant action in Hamilton County Chancery Court on June 21, 2011. Defendant removed it to this Court on July 21, 2011, and then filed a Motion to Dismiss (Doc. 6) for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) on August 18, 2011 in which it asserted two primary bases for dismissal. First, it argued that the gravamen of the Complaint – despite being designated a breach of contract action – is actually an action for injury to personal property, and thus the shorter three-year statute of limitations applicable to the latter should apply to Plaintiffs' Complaint, rather than the six-year statute of limitations applicable to the former. (MTD Mem. 4.) Second, it argued that even if the Court finds this to be a breach of contract action and applies the six-year statute of limitations, the action is still untimely, as the cause of action accrued in October 2002 – when Regions drilled into the safety deposit box and disposed of the jewelry – and not November of 2005 – when Plaintiffs first became aware of the loss, because the "discovery rule" does not apply here since Plaintiffs failed to exercise reasonable care in checking on their safety deposit box between 2002 and 2005. (*Id.* at 5.)

Plaintiffs filed their Response on September 8, 2011. In that Response, they first respond that this is clearly a breach of contract action as "[t]he delivery by Plaintiffs of their valuable jewelry to the Defendant bank created a bailment-for-hire, the violation of which is a breach of contract, not a tort." (Respon. 3.) Even if it were not a breach of contract action, they argue, Regions is equitably estopped from making that argument, since it said, in a January 18, 2011 letter to Plaintiffs, that "the six year statute of limitations for breach of contract has elapsed." (*Id.* at 3-4.)

They also dispute the standard for the application of the discovery rule, arguing that

it is not, as Regions suggests, whether the breach is "inherently undiscoverable," but rather it is when "in the exercise of reasonable care and diligence, Plaintiffs should have known" of the injury. (*Id.* at 4-5.) The argue that in this case, one of the reasons for leasing the safety deposit box in the first place was to avoid having to worry about the security of the contents, and Regions could not impose on them some sort of affirmative duty to check on its contents, particularly where the harm about which they apparently needed to be concerned was the negligence of the very entity they were paying to protect their valuables, Regions itself. (*Id.* at 5-6.) Therefore, they assert that the claim accrued when Plaintiffs received actual notice of the breach.

Finally, they point the Court to Tenn. Code Ann. § 45-2-907, the statute setting forth specific regulations governing the remedies available to the a lessor of a safe deposit box for nonpayment of rent. (*Id.* at 7.) That statute provides a very detailed course of action a lessor of a safe deposit box must follow when seeking redress for nonpayment of rent on that box, the very first step of which is to send a notice of nonpayment in a particular manner (by certified mail, return receipt request or by registered mail to the last known address of the lessee), within a particular time (not sooner than 30 days nor later than four (4) years), and containing certain specified statements (that the box will be opened and its contents stored for a year at the expense of the lessee, that the contents may be offered for sale and unsold or unsalable items destroyed without additional notice, and the proceeds of the sale, less expenses, unpaid rent, and storage, will be transferred to the state treasurer). (*Id.* at 7) (quoting Tenn. Code Ann. § 45-2-907(a)(1)-(3)). Plaintiffs allege – and Regions does not dispute thus far – that Regions did not follow any of these steps.

This matter is now ripe for review.

## III. ANALYSIS

As an initial matter, the Court observes that, attached to its Response is the Affidavit of Plaintiff Naseer Sheikh. (Doc. 8-1.) Rule 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." The materials appended are unnecessary for the Court's consideration and thus will be excluded by the Court; therefore the instant motion remains one to dismiss and is not converted to one for summary judgment.

The statute granting banks the authority to construct and lease safe deposit boxes, Tenn. Code Ann. § 45-2-902 specifies that:

> . . . it is understood that in no event shall the bank be liable for any loss of the jewelry, diamonds, gold, bank notes, bonds, notes, or other valuables by theft, robbery, fire, or other cause, the bank not being the insurer of the safety of the property, nor in any manner liable for the safety of the property. The bank is not required to take any note of property thus deposited, as the person who rents a safe, box, or receptacle is, for the term of the lease, the owner thereof.

But, Tennessee courts have clearly held that "[b]anks in business of renting safety deposit boxes" can be liable for damages resulting from the removal of items from those boxes where "[t]here is [an] allegation that the defendant as a bank in the business of renting safety deposit boxes breached the duty of care owed to the plaintiff" – that is, the duty by the lessor the bank, as bailor, to the lessee, as bailee – or an allegation of "a breach of written contract between the parties." *Whitaker v. First Am. Corp.*, 779 S.W.2d 383, 384 (Tenn. Ct. App. 1989) (citing *Pennington v. Farmers' & Merchants' Bank*, 144 Tenn. 188, 231 S.W. 545 (1920) for the proposition that Tenn. Code Ann. § 45-2-902

clearly contemplates a rental contract and noting "[t]hese statutory provisions . . . did not bar the application of bailment principles to the rental of a safety deposit box in" *Young v. First Nat'l Bank of Oneida*, 265 S.W. 681 (Tenn. 1924)). *See also*, *Paehler v. Union Planters Nat. Bank*, 971 S.W.2d 393, 397 (Tenn. Ct. App.1997) (citing *Whitaker* for the proposition that "[t]he rental of safe deposit boxes by banks creates a bailment relationship between the bank and the customer that is governed by the application of common law and statutory bailment principles.") In addition, courts have considered other claims, depending on the nature of the relationship between the parties, such as "conversion, breach of fiduciary duty, breach of contract, gross negligence, and fraud." *Paehler*, 971 S.W.2d at 397. Finally, the Tennessee Court of Appeals has even held that "a bank cannot, by including an exculpatory provision in a standardized deposit box contract, relieve itself of the duty owed to renters of safe deposit boxes to exercise a level of care commensurate with banks in similar communities with regard to the property deposited in the box. *Smith v. Peoples Bank of Elk Valley*, 1992 WL 117061, at *4-5 (Tenn. Ct. App. June 3, 1992) (citing Whitaker v. First American Corp., 779 S.W.2d at 384).

Defendant's first argument, that this is not a breach of contract action, but rather an action for injury to personal property, is unavailing. The Court agrees that the precise nature of the agreement between the parties is not yet clear, but the Complaint clearly implies that the parties signed a lease agreement, insofar as "[a]ll Plaintiffs were listed by the Defendant Bank as lessee of the safe-deposit box." (Compl. ¶ 6.) And while neither the precise contents and terms of that agreement nor the scope of the duties to each other are yet clear, limiting the action by imposing the Court's own construction of the relationships

at issue is certainly not appropriate at this time. If Defendant was merely confused and required clarification, a Motion for a More Definite Statement pursuant to Rule 12(e) would have been more appropriate.

It is still possible, however, that Plaintiffs can no longer assert certain claims due to the length of time between the accrual of the claim and the filing of the instant action on June 21, 2011. Accordingly, it is now necessary to determine when the cause of action in this matter accrued. No matter the nature of the claim, the latest date, barring the application of equitable tolling principles like the discovery rule, on which the action could have accrued, given the nature of the allegations in the Complaint, is when Regions converted. destroyed, or sold the property in the safe deposit box; given that this is alleged to have occurred sometime in October 2002, the actual injury occurred no later than October 31, 2002. The question then becomes whether Plaintiffs are entitled to equitable tolling of the statute of limitations due to their failure to discover the loss until November 2005.

In *Pero's Steak and Spaghetti House v. Lee*, 90 S.W.3d 614, 621 (Tenn. 2002), the Tennessee Supreme Court noted that:

> It is now well-established that, where applicable, the discovery rule is an equitable exception that tolls the running of the statute of limitations until the plaintiff knows, or in the exercise of reasonable care and diligence, should know that an injury has been sustained. *Quality Auto Parts Co. Inc.*, 876 S.W.2d at 820. The discovery rule does not, however, toll the statute of limitations until the plaintiff actually knows that he or she has a cause of action. The plaintiff is deemed to have discovered the right of action when the plaintiff becomes aware of facts sufficient to put a reasonable person on notice that he or she has suffered an injury as a result of the defendant's wrongful conduct. *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998); *Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994).

> Were statutes of limitations strictly applied, plaintiffs would be required to sue "to vindicate a non-existent wrong, at a time when the injury is unknown and unknowable." *Teeters*, 518 S.W.2d at 515. The discovery rule is intended to prevent the inequity such a strict application of the rule would produce. *Quality Auto Parts Co. Inc.*, 876 S.W.2d at 820.

Further, in *Pero's Steak*, the Tennessee Supreme Court also noted that "[w]hen determining whether to apply the discovery rule, this Court considers the specific statutory language at issue and balances the policies furthered by application of the discovery rule against the legitimate policies upon which statutes of limitations are based." *Id.* at 620 (quoting *Quality Auto Parts Co., Inc., v. Bluff City Buick Co. Inc.*, 876 S.W.2d 818, 820 (Tenn. 1994)).

In this case, Regions had a statutory duty to follow certain procedures before doing as they did, that is, drilling into the box and destroying, converting, or auctioning of the materials within. Tenn. Code Ann. § 45-2-907 provides:

> (a) Notice. If the rental due on a safe deposit box has not been paid, the lessor shall, not sooner than thirty (30) days nor later than four (4) years after the rental was due, send a notice by certified mail, return receipt requested, or by registered mail to the last known address of the lessee, stating that unless payment of the rental is made within thirty (30) days after the date of the notice:
>
> (1) The safe deposit box will be opened and its contents stored for a minimum of one (1) year at the expense of the lessee;
>
> (2) Without additional notice to the lessee, the contents may be offered for sale and unsold or unsalable items will be destroyed; and
>
> (3) The proceeds of the sale, less expenses, unpaid rental charges, and storage will be transferred to the state treasurer pursuant to title 66, chapter 29, part 1.

Before Regions could take the course of action it apparently did, it was required by this statute to notify Plaintiffs in a particular manner that was more likely to ensure they would

receive actual notice, *precisely* to avoid the situation at present. They did not do so – sending it to an address none of the Plaintiffs had ever provided to Regions. Accordingly, the Tennessee General Assembly has recognized that in this situation – where the question is removing contents from a safety deposit box and dispersing or destroying them by the very entity entrusted with their safekeeping in this situation – Regions was the one to exercise the reasonable care in following the procedures outlined in the statute. Per Plaintiffs' well-pleaded allegations, they did not. It is also of interest that the statute itself recognizes that safety deposit boxes are not as regularly monitored as the subjects of other contracts insofar as it provides that the contents must be stored for a minimum of one (1) year after the notice is sent.

In response to Plaintiffs' assertion that, after receiving the 2000 notice Naseer Sheikh went to the North River branch and "was assured that the Bank had set up his safety-deposit box account so that the annual rental fees would be deducted from his checking account," Regions says "[n]oticeably absent from the Complaint is any allegation that Plaintiff followed up with Regions concerning this arrangement, that he confirmed this arrangement in writing, or, for that matter, that Regions actually did deduct the rent from Plaintiffs' account after Mr. Sheikh's 2000 visit to the bank." (Compl. ¶ 8; MTD Mem. 2.) Yet the Court is to accept all well-pled – as these are – factual allegations as true, it means essentially that Naseer Sheikh gave Regions access to his account to allow them to deduct the payment; that is, in exchange for the convenience of not having to go to the bank yearly to make the payment, he allowed the bank access to his account. Likewise, in exchange for the assurance of a source from which payment would be made, Regions took on itself the responsibility of making that deduction. One of the advantages of automatic withdrawal

for the payor giving permission for such is not having to monitor due dates and deductions. Therefore, Regions's argument that the Sheikhs were negligent for not noticing that the Bank was not deducting the payments as it said it would, and thus that it was their duty to ensure that the Bank was protecting itself, is, without more, nonsensical.

Accordingly, the Court finds that it is appropriate to apply the discovery rule here; the cause of action here accrued in November of 2005, on whichever date Plaintiff Naseer Sheikh visited Regions and was told his box's contents had been removed and destroyed or sold. Because the Court has also found that the Complaint states at least an action for breach of contract, and the parties agree that the statute of limitations applicable to such actions is six years, Plaintiff's Complaint is timely, and Defendant's Motion to Dismiss (Doc. 6) will be **DENIED**.

## IV. CONCLUSION

Accordingly, and for the reasons stated above, Defendant's Motion to Dismiss (Doc. 6) is hereby **DENIED**. As a scheduling order has not yet been entered in this case, the Court will order the parties by separate order to appear before the Court for the purposes of conducting a Rule 16 Scheduling Conference.

**SO ORDERED** this 31st day of March, 2012.

*<u>/s/Harry S. Mattice, Jr.</u>*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE